J.A22036/14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA,    :    IN THE SUPERIOR COURT OF
   :        PENNSYLVANIA
           Appellee    :
   :
       v.    :
   :
   :
GAIL L. SCHNEIDER,    :
   :
           Appellant    :    No. 1593 MDA 2013

Appeal from the Judgment of Sentence June 24, 2013
In the Court of Common Pleas of Luzerne County
Criminal Division No(s).: CP-40-CR-0003729-2010

BEFORE: PANELLA, SHOGAN, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:            **FILED APRIL 16, 2015**

Appellant, Gail L. Schneider, appeals from the judgment of sentence entered in the Luzerne County Court of Common Pleas following a jury trial and her convictions for arson endangering persons,[1] arson endangering property,[2] reckless burning endangering personal property,[3] criminal mischief,[4] and arson of inhabited building.[5] Appellant contends the trial

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. § 3301(a)(1)(i).

[2] 18 Pa.C.S. § 3301(c)(2).

[3] 18 Pa.C.S. § 3301(d)(2).

[4] 18 Pa.C.S. § 3304(a)(1).

court erred in (1) denying her motion *in limine* to preclude the Commonwealth from introducing evidence pursuant to Pa.R.E. 404(b); (2) denying a request for a cautionary jury instruction; (3) allowing the Commonwealth to present an improper closing argument; (4) finding the evidence sufficient; (5) finding the verdict was not against the weight of the evidence; (6) denying the motion for judgment of acquittal; and (7) imposing a manifestly excessive sentence. Appellant also contends counsel was *per se* ineffective for failing to object during the Commonwealth's closing argument. We affirm.

The facts established at the jury trial were as follows: David Basala, a former firefighter and freelance photographer/videographer testified that he went to the location of the fire to take a video of it.[6] N.T., 4/15/13, at 5-7. He heard about the fire on the dispatch radio. *Id.* at 6. He took a video of the fire and turned it over to the Pennsylvania State Police at Hazelton. *Id.* at 8. He reviewed the video prior to his testimony and it accurately depicted the fire he videotaped the night of the incident. *Id.*

Allen Culp was staying with his fiance on the night of the fire in a building next to the site of the fire. *Id.* at 11. He could see the rear stairway of the building engulfed in flames. *Id.* at 13. He and another

---

[5] 18 Pa.C.S. § (a)(1)(ii).

[6] The fire took place at the Lantern Lane Building located in Conyngham, Pennsylvania. *Id.* at 11.

gentleman entered the building, although there was no light, to see if there were people inside the building. *Id.* at 15. He had to exit the building due to the conditions. *Id.* at 16-17.

Barbara Reese,[7] a ninety-five year old former resident of the Lantern Lane Building, lived on the second floor of the building at the time of the fire. *Id.* at 27. She described the stairway she accessed to reach her apartment. *Id.* at 28. There was a chair on the landing. *Id.* The top door of the stairway was kept locked. *Id.* The bottom door by the parking lot was never locked. *Id.* Ms. Reese knew Appellant. *Id.* at 29. She was awakened by the fire alarm and called 9-1-1. *Id.* at 30-31. She exited her apartment from a window and climbed a ladder to get onto the roof. *Id.* at 32. The firemen on the scene came to her assistance. *Id.* Her 9-1-1 call was played for the jury. *Id.*

Nellie Stratts, a ninety-four year old resident of the building at the time of the fire, woke after hearing an alarm and saw smoke pouring into her apartment. *Id.* at 43. She called 9-1-1 and checked on her neighbors. *Id.* She heard someone say to get down on her knees and crawl to the front of the building. *Id.* at 44. She was carried out of the building. *Id.*

---

[7] There were three other tenants in the building, Jeffrey Antolick, Nicole Buak and Nellie Stratts. N.T., 4/15/13, at 153. There were four commercial tenants in the building, Falvello Law Firm, Richard Grovich, DMD, Navigate Financial Advisors, and M & L Trucking. *Id.* at 596-97.

Richard Bognar, a volunteer fireman and paid EMT for the Medic Unit of Butler Township and Conyngham Borough, arrived at the scene and described heavy smoke throughout the building. *Id.* at 59, 61. He and another firefighter rescued Ms. Reese from the roof. *Id.* at 64. All persons were accounted for and he ordered all firefighters out of the building. *Id.* at 65. The alarm came in at 2:30 a.m. and they were still putting water on the fire at 9:00 a.m. *Id.* He had been a fireman for approximately thirty years. *Id.* at 69. He had responded to hundreds, thousands of fires. *Id.* He ranked this fire within the top ten. *Id.*

Joel Michael Mummie, a volunteer fireman for twenty-four years, stated it was one of the worst fires he had seen. *Id.* at 73, 80. "It was a situation where it was just an act of God that nobody got killed." *Id.* at 80.

Shawn Hilbert was qualified as an expert in the area of fire investigation and determination of origin and cause and testified for the Commonwealth. *Id.* at 97. He arrived at the scene on the date of the fire at 7:08 a.m. *Id.* at 102. He met with the property owner, Kenneth Temborski. *Id.* at 103. The owner stated he had not performed any recent electrical work on the property. *Id.* He took numerous photographs of the property. *Id.* at 106. There was extensive damage in the area where the chair that Ms. Reese mentioned was located. *Id.* at 122-23. The extensive damage in this area led him to believe that this was the origin of the fire. *Id.* at 123. There was greater damage in the area where the chair was

located. *Id.* at 131. The damage to the floor joists indicated that the fire was burning in a downward fashion. *Id.* at 135. He stated the

> fire was caused by human hands introducing a competent ignition source, such as an open-flame device, matches, a lighter, anything that produces a flame and placing the flame in direct contact with combustible materials, namely, the straight-leg wooden chair with the associated polyurethane cushions on it and igniting that on fire, and the fire then progressed from there, and resulted in the damage that you all saw today.

*Id.* at 155.

Paul Savage was a senior fire and explosion consultant for Project Time and Cost Forensic Consulting Service and also testified for the Commonwealth. *Id.* at 268. He was recognized by the court as an expert in the area of fire investigation, and specifically, the determination of origin and cause. *Id.* at 272, 274. He went to the scene of the fire on September 8, 2010. *Id.* at 277. The first floor of the building sustained "water damage from the firefighting effort . . . but there was very little fire damage anywhere on the first floor or the ceilings or any of the devices, electrical devices or anything in the entire first floor." *Id.* at 280. He believed that he was dealing with a fire that originated on the second floor. *Id.* at 281. He stated:

> The more I walked back and forth, up and down the hallway . . . you couldn't get away from the fact that the burn patterns that came from the most severe to less severe came from in that stairway on the landing area and traveled either up through the roof and into the common roof over the second floor before it collapsed . . . . Everything—the burn patterns that you are so used to

seeing and so trained to see, would send you right back into that landing way all the time; so, I knew I was looking [sic] this had to be the area based on the most severe damage . . . .

* * *

The only thing that I was told is that there is a chair upstairs in that landing, and it's basically just used for tenants of the second floor to come and go. . . . That was the most common way they would come and go. They would go in this downstairs door, which I told [sic] was not a locking door . . . .

*Id.* at 288, 290.

He eliminated electrical wires as the cause of the fire. *Id.* at 293-308, 315. Examining a photograph of the area, he stated: "The greatest damage to the floor joist is further out towards the wall where this chair is reported to be back in that corner or somewhere along that back wall. For that reason, and other burn patterns in that room, and the lack of damage on that wire that I did not feel when I was there—it's my belief that that area of damage is from fire effect and fire travel, not fire cause." *Id.* at 309.

He took samples of the debris in the building and submitted them to a certified lab for analysis. *Id.* at 316. The report indicated that they were negative for ignitable or flammable liquids. *Id.* at 317. He opined as follows as to the cause of the fire:

My opinion is that based on my scene observations and the lack of some things which was [sic] failures in electrical components, burn patterns at the scene, burn patterns in that second floor, understanding that there was a chair apparently similar to what we have here in the courtroom

that was in that corner as a fuel package in that corner, and nothing else there as a heat source . . . .

I didn't see anything else that was going to be a competent heat source to start this fire in the area that I'm considering . . . . [T]his is an incendiary fire and it started by human hands with a manually contacted open flame, be it, a match or lighter igniting other combustibles . . . . It could be paper, cardboard, any of those type properties. Whether they're at the scene and used or whether somebody brings them into the scene to ignite them to cause for [sic] this fire, those items are ignited at or about or on top of this chair as a cause for this fire.

*Id.* at 317-18.

Appellant presented John Michael Agosti, President and Owner and Fire analyst for John Michael Agosti and Associates. *Id.* at 357. He testified as an expert in the field of fire investigation and determination of cause and origin. *Id.* at 368. He disagreed with Corporal Hilbert's opinion as to the cause of the fire. *Id.* at 381. Corporal Hilbert's opinion was not based on any physical evidence that he had "or on sound fire science preference books, and he did not conclusively rule out accidental causes . . . ." *Id.* Because he did not exclude out accidental causes, "[i]t should be an undetermined cause." *Id.* He continued:

We have a lot of undetermined fires across the United States. Approximately 30 percent of all fires are undetermined. There's a reason they're undetermined. They started from something; but, the reason they're undetermined is because the fire may well have destroyed any evidence to support what the cause was; so you can't come up with a cause, if you can't prove that it was this, that or the other.

So, as far as Corporal Hilbert, his cause is a human being taking a match or a lighter and igniting the chair. We don't have any information or witnesses of a human being in that stairwell. We don't have the lighter or the match, and we don't even have the chair. So he has no physical evidence or proof that that ignition scenario took place; yet, we have electrical components, numerous electrical components in that concealed floor space that were not properly eliminated; and, we know electricity is a competent ignition source. We have actually five breakers tripped; so, we know those circuits were energized. They were flowing electricity.

*Id.* at 381-82. He agreed with some of Mr. Savage's opinions, but not his opinion as to cause and origin for exactly the same reasons as he disagreed with Corporal Hilbert. *Id.* at 382-83.

On cross-examination by the Commonwealth, he stated he was not aware if Appellant made any efforts to get into the building and examine it while it was still standing. *Id.* at 487. When he conducted the test burn on the polyurethane foam, he did not use the Scientific Method. *Id.* at 489. He stated: "I think I described in my report that I conducted a non-scientific test just for observation to develop some observations of the polyurethane foam." *Id.* When using Scientific Methods to do investigations, you test hypotheses and use deductive reasoning. *Id.* The best way to investigate origin and cause of a fire is the Scientific Method. *Id.* at 525.

Nicole Laura Buak, a resident of the building, testified that the chair was located on the landing at the top of the stairwell. *Id.* at 602. The door at the bottom of the stairwell was never locked. *Id.* at 604. Appellant lived in the apartment next to her. *Id.* She had previous problems with

Appellant. *Id.* at 605-06. She testified regarding an incident that occurred on September 8, 2009. She looked out of her window at approximately 11:45 p.m. and saw Appellant outside of the apartment building near her car in the parking lot. *Id.* at 606. Appellant was screaming and cursing on her cell phone. *Id.* A policeman approached her and told her to go home and be quiet. *Id.*

Appellant came back to her apartment and the yelling and cursing continued and Ms. Buak called the police. *Id.* at 607. The same officer returned and Ms. Buak went to speak with him. *Id.* The Officer told Ms. Buak to return to her apartment and he went to approach Appellant. *Id.* She again heard noise outside and saw Appellant in the parking lot near her car. *Id.* at 608. Ms. Buak and her fiancé, Leo DeLucca, exited the apartment and "noticed the word, die, was scribed into our front door." *Id.* at 608, 614. They exited the building and went to the car. *Id.* at 610. Her fiancé noticed there was a scratch on the vehicle. *Id.* at 611. Ms. Buak gave a statement to the police. *Id.* at 612. Appellant was cited for the incident. *Id.* at 613. Leo DeLucca also testified about the incident at trial corroborating the same facts. *See id.* at 618-23.

Kenneth John Temborski, the owner of the building, testified. *Id.* at 623, 624. At the time of the fire, there were four commercial tenants in the building and four residential tenants. *Id.* at 625. He did upgrades to the property since he purchased it. *Id.* at 626. There was new carpeting and

new windows. *Id.* He installed new appliances, microwaves, stoves and refrigerators. *Id.* at 626-27. He lived about 300 yards from Lantern Lane and could see the back of the building from his windows. *Id.* at 630. Appellant was a tenant in the building for approximately ten months until September of 2009 when she was evicted.[8] *Id.* at 635, 636. The reason for the eviction was the incident with Nicole Buak. *Id.* at 636.

Mr. Temborski inspected the apartment after she vacated it and "there was substantial damage to the apartment. The cabinet doors were kicked in. There was dog feces all over the walls, on the carpets, and holes punched in—kicked in the walls of the closets, like, in the drywall." *Id*. at 637. He informed Appellant that he would be keeping her security deposit and she filed a landlord/tenant complaint. *Id.* Appellant filed a landlord/tenant complaint. *Id.* The outcome of the hearing was in his favor. *Id.* at 645. Following the hearing, Mr. Temborski testified "[s]he was very dissatisfied; and when we were ready to walk out of the courtroom she said, This ain't over." *Id.* at 646.

Matthew Rishkofski, owner of Bandt's Roadhouse, a bar/ restaurant in Berwick, asked Appellant to leave the bar on the night of September 4,

---

[8] We note that the Commonwealth asked Mr. Temborski why Appellant was only a tenant for ten months and he responded "There were several complaints—" The Commonwealth asked for sidebar and informed the court they were not looking for that answer and asked to redirect the witness with a leading question. *Id.* at 635-36. The court agreed and the sidebar concluded. *Id.* at 636.

2010. *Id.* at 665. She was angry and left at approximately 11:00 p.m. *Id.* at 666.

Eugene Rafalli, a police officer, testified that on the evening of September 4th into September 5th, he was at a bar, Cuz-N-Joe's Bar and Pub in Conyngham, across the road from the Lantern Lane Building. *Id.* at 667. He was not in his capacity as a police officer at the time. *Id.* at 669. He had told one of the troopers that had interviewed him in this case that Appellant did not appear intoxicated. *Id.*

Brittany Platukas-Heimo, an employee at the bar on that date, testified that Appellant had frequented the bar several times and they had talked. *Id.* at 674. She did not remember exactly what she told the police on the night of the incident, three years ago. *Id.* at 676. The police report indicated that she told them Appellant appeared intoxicated. *Id.* she testified that she did not remember but that Appellant "was acting a little strange." *Id.*

Joan Nevedal, at the time of the incident, was employed by the Pennsylvania State Police as an intelligence analyst. *Id.* at 710. She was assigned to the computer crime unit. *Id.* She testified "as an expert in the area of computer forensic examination." *Id.* at 713. She examined Appellant's Sony Vaio desktop computer. *Id.* at 715. There were two general arson searches on Appellant's computer. *Id.* at 717. They were "arson lighter fluid and how to blow up a car." *Id.*

She also analyzed Appellant's Apple iPhone. *Id.* at 724. In response to the text, "I told you [Mr. Temborski] was a douche. He needs a good beating. I wish I could give him [sic] myself. I have too much to lose." *Id.* at 727. Appellant responded: "Well, paybacks are a bitch. I'm holding onto the apartment key as he owes me dollar signs. [H]e will not reimburse me monies that are due and owing to me, six days worth. So he'll get his keys when I'm good and ready to give them back." *Id.*

The parties stipulated that surveillance video dated September 4, 2010 from the PNC Bank shows Appellant's vehicle passing the PNC Bank on Main Street in Conyngham at 1:58 a.m. on September 5, 2010. *Id.* at 751.

James Surmick, a Pennsylvania State Police trooper, testified. *Id.* at 752. He went to the scene of the incident on September 5, 2010. *Id.* at 754. He interviewed Appellant at the station house. *Id.* at 759. She told the trooper that she was not in Conyngham on the night of the fire, "without a doubt." *Id.* at 760, 764. Appellant told him she had a white Honda. *Id.* at 762. She had gone to two bars in the Berwick area on the night of September 4th. *Id.* at 763. She left Bandt's Roadhouse sometime between one and one-thirty and he believed she said she went home. *Id.* She said she learned about the fire from local media. *Id.* at 764.

The trooper had interviewed the bartenders of Cuz-N-Joe's in Conyngham and they indicated they knew Appellant. *Id.* at 764. They indicated that on the night of the fire she had been in the bar. *Id.* at 764-

65. He confronted Appellant with this information and "[s]he admitted to lying, and she said she had lied because she was scared." *Id.* at 765. She said she did not go near the Lantern Lane building that night. *Id.* She went to her pet grooming shop to drop off boxes. *Id.* The video from PNC Bank, shows Appellant "departing Conyngham on Main Street, and this PNC Bank is just down the street from the Cuz-N-Joe bar and from Lantern Lane, and it shows her departing Conyngham at 1:58 in the morning on September the 5th." *Id.* at 770.

Appellant testified that she did not set the fire at Lantern Lane. *Id.* at 824. She stated that she was scared of being accused of the fire because of her past relationship with Ms. Buak and Mr. Temborski and the eviction. *Id.* at 825. She was angry with Mr. Temborski because she felt he was cheating her out of her money. *Id.* at 840. When she heard that the Conyngham fire was ruled arson, she looked up arson in the Conyngham area on her iPhone and computer. *Id.* at 877. She stated that she didn't "want to know how to blow up a car. [She] was curious." *Id.* at 878. She left the bar at 2:00 a.m. *Id.* at 882.

The trial court summarized the procedural history of this case as follows:

> On April 24, 2013, the jury returned verdicts of guilty on all counts. A Pre-Sentence Investigation (PSI) was ordered to be completed by the Luzerne County Adult Probation and Parole Department, and a sentencing date was scheduled.

A sentencing hearing commenced on June 24, 2013, with the Commonwealth presenting the testimony of six witnesses, and [Appellant] presenting the testimony of two witnesses for this [c]ourt's consideration. . . . [Appellant was sentenced] to an aggregate term of incarceration of fourteen (14) to twenty eight (28) years in a state correctional institution. [Appellant] was subsequently advised by this [c]ourt of her post-sentence rights before the hearing concluded.

On July 3, 2013, [Appellant] filed a Motion for Post-Sentence Relief, and the Commonwealth filed a response thereto on July 8, 2013. By Order of August 14, 2013, we denied [Appellant's] Motion for Post-Sentence Relief and again advised her of her appellate rights.

Trial Ct. Op., 12/17/13, at 1-2 (unpaginated). This timely appeal followed.

Appellant filed a court-ordered Pa.R.A.P. 1925(b) statement of errors complained of on appeal and the trial court filed a responsive opinion.

Appellant raises the following issues for our review:

I. The trial court erred in admitting non-relevant and prejudicial evidence by denying [Appellant's] motion *in limine* and response to the Commonwealth's 404(B) notice to preclude any and all computer and iPhone searches related to arson that were in unallocated clusters and could not be dated and by allowing testimony at trial related to the searches on her compter and iPhone that specifically mentioned how to "blow up a car" and accelerants[.]

II. The trial court erred in denying [Appellant's] request for a cautionary instruction to the jury regarding the questions asked of [Appellant] during her testimony about Evelyn Welsko, which allowed the jury to assume facts not admitted through a witness[.]

III. The trial court erred in allowing the Commonwealth to present an improper closing argument, in that the prosecutor played the audio of the backdraft video and argued it during her closing, when such audio was never presented through testimony at trial[.]

- 14 -

IV. The evidence presented by the Commonwealth was insufficient to establish the elements of each of the offenses charged when apart from her mere presence in the location of the fire, and having left the area approximately thirty-four (34) minutes before the fire was called in to 911, no evidence established that [Appellant] set this fire or that it was even set by a human hand when Corporal Hilbert did not conduct a thorough fire investigation to rule out an electrical fire[.]

V. The verdict of the jury was against the weight of the evidence when the evidence only established that [Appellant] was in the location of the fire approximately thirty-four (34) minutes before the fire was called in to 911[.]

VI. The trial court erred in denying her motion for judgment of acquittal as to cou[n]t 5, arson-reckless burning as it relates to Mr. Temborski's pecuniary loss, which is covered by count 6 and also to which no testimony was presented regarding his personal items affected by this fire[.]

VII. The 14 to 28 year sentence was manifestly excessive when the court focused almost exclusively on the knowledge of the risk of harm to firemen, the knowledge of the risk of harm to the victims, the age of the victims, the financial damage to the building, and emotional damage to the victims and failed to give appropriate meaningful consideration to, among other things, the legislature's account for this through the sentencing guidelines, the fact that no testimony was presented to show [Appellant] was aware that elderly victims still resided in the building and [Appellant] was ordered to pay restitution therefore by using the financial damage as an aggravator the court engaged in double dipping[.]

VIII. Trial counsel's failure to object during the Commonwealth's closing argument to the Commonwealth's introduction of the audio portion of the backdraft video and improper argument by the prosecutor, when such audio was never presented through testimony at trial was *per se* ineffectiveness.

Appellant's Brief at 11-12.

First, Appellant contends the trial court erred in denying her motion *in limine* to preclude the Commonwealth's Pa.R.E. 404(b)[9] evidence. In the motion *in limine*, Appellant averred, *inter alia*, that the Commonwealth's forensic computer expert, Joan Nevedal, should not be permitted to testify that she searched for articles related to arson. Appellant argued that because the expert could not testify as to the date of the searches, the evidence was not relevant to the current charges. Def.'s Mot. *In Limine*, 1/27/12, at 3 (unpaginated).

Instantly, Appellant renews the argument the evidence of her computer and iPhone searches related to arson should not have been admitted. Appellant's Brief at 25. She avers that because the intelligence analyst who testified at trial was unable to give a specific date for the searches, the searches could have taken place before or after the alleged arson. *Id.* at 28.

On January 4, 2013, the trial court entered an order which provided: "defense counsel motions—denied w/o prejudice[,] matters addressed @ time of trial." Order, 1/4/13. As a prefatory matter we consider whether Appellant has waived this issue.

Pennsylvania Rule of Evidence 103 provides in pertinent part:

---

[9] We note that Pa.R.E. 404(b) has been amended, effective March 18, 2013.

**(a) Preserving a Claim of Error.** A party may claim error in a ruling to admit or exclude evidence only:

(1) if the ruling admits evidence, a party, on the record:

(A) makes a timely objection, motion to strike, or motion *in limine*; and

(B) states the specific ground, unless it was apparent from the context[.]

\* \* \*

(b) Not Needing to Renew an Objection or Offer of Proof. Once the court **rules definitively on the record**—either before or at trial—a party need not renew an objection or offer of proof to preserve a claim of error for appeal.

Pa.R.E. 103(a)(1)(A)-(B), (b)[10] (emphasis added).

In **Commonwealth v. Stokes**, 78 A.3d 644 (Pa. Super. 2013), *appeal denied*, 89 A.3d 661 (Pa. 2014), the appellant filed a motion *in limine* to exclude certain evidence. **Id.** at 651. The court denied the motion, following oral argument. **Id.** The Commonwealth argued "the matter is waived because although appellant filed a pre-trial motion *in limine* seeking exclusion of the evidence, he did not make an objection on the record to the court's ruling on the motion, nor did he object when the evidence was introduced at trial." **Id.** at 652. This Court rejected the Commonwealth's argument, citing Pa.R.E. 103, and found: "[The a]ppellant preserved the issue by litigating the pre-trial motion *in limine*, and was not required to object to the trial court's ruling on the motion or place an objection on the

---

[10] We note that Pa.R.E. 103 was replaced, effective March 18, 2013.

record at trial in order to preserve the issue for appeal." **Stokes**, 78 A.3d at 652.

In the instant case, unlike **Stokes**, the trial court did not definitively deny the motion *in limine*. **See** Pa.R.E. 103(b). The trial court collectively denied the defense motions **without prejudice** to address the matters at the time of trial. **See** Order, 1/4/13. Without prejudice is defined as "without loss of any rights; in a way that does not harm or cancel the legal rights or privileges of a party." Black's Law Dictionary 1740 (9th ed. 2009). Appellant's motion *in limine* did not preserve the issue. **See Stokes**, 78 A.3d at 652.

At trial, the Commonwealth called Nevedal to testify. Appellant did not make a timely objection for the trial court to address the matter. **See** N.T. 709-38. Therefore, we find the issue waived. **See** Pa.R.E. 103(b); **Stokes**, 78 A.3d at 652.

Second, Appellant contends the trial court erred in denying her request for a cautionary instruction in relation to her testimony about telephone calls she made to her friend, Evelyn Welsko, about the fire. Appellant's Brief at 30. Specifically, Appellant avers the court should have given the following instruction: "The questions that counsel put to the witnesses are not evidence. . . . You should not guess that a fact is true just because one of the attorneys or I ask a question about it. It is the witnesses' answers that provide the evidence. . . ." **Id.** at 31. She concedes that "the trial court

gave this instruction at the close of trial . . . ."[11]   ***Id.***   Appellant avers the

instruction should have been given immediately following the objectionable

testimony.  ***Id.***

As a prefatory matter, we consider whether Appellant has waived this

issue.

> Rule 2119(a) of the Rules of Appellate Procedure requires
> a  properly  developed  argument  for  each  question
> presented.  This requires, among other things, a discussion
> of and citation to authorities in the appellate brief and "the
> principle for which they are cited."  ***See*** Pa.R.A.P. 2119(a),
> (b).  Failure to conform to the Rules of Appellate Procedure
> results  in  waiver  of  the  underlying  issue.   ***See***
> ***Commonwealth v. Buterbaugh***, 91 A.3d 1247, 1262
> (Pa. Super. 2014) (*en banc*).

---

[11] At trial, the court instructed the jury, *inter alia*, as follows:

> In determining the facts, you are to consider only the
> evidence which has been presented in court and the logical
> inferences  which  can  be  derived  from  that  evidence.
> Statements made by counsel do not constitute evidence,
> as I've told you previously.  Also, the questions which
> counsel put to witnesses are not themselves evidence.  Let
> me repeat that again.  The questions which counsel put to
> witnesses  are  not  themselves  evidence.   It  is  the
> witnesses' answers which provide the evidence for you.
> You should not speculate or guess that a fact may be true
> merely because one of the lawyers asks a question which
> assumes or suggests that a fact is true.  That occurred
> throughout this case on occasion.  You are not to rely upon
> supposition  or  guess  on  any  matters  which  are  not  in
> evidence.  You should not regard as true any evidence
> which you find to be incredible, even if it is uncontradicted.

N.T., 4/15/13, at 1055-56.

***Commonwealth v. Veon***, 109 A.3d 754, 774 (Pa. Super. 2015). Instantly, Appellant's argument is devoid of any discussion of and citation to legal authority. Therefore, this issue is waived. ***See id.***

Thirdly, Appellant contends the trial court erred in allowing the Commonwealth to present an improper closing argument when the prosecutor played the audio of the backdraft video when the audio was not presented through testimony at trial.[12] As a prefatory matter, we consider whether Appellant has waived this issue.

Appellant concedes that trial counsel did not object to the Commonwealth's closing argument. Appellant's Brief at 61. In ***Commonwealth v. Flor***, 998 A.2d 606 (Pa. 2010), our Supreme Court opined:

> There is no indication from the record that [the a]ppellant objected to the prosecutor's closing argument during the proceedings, and hence these issues are waived pursuant to Pennsylvania Rule of Appellate Procedure 302(a). ***See*** [***Commonwealth v. McCrae***, 832 A.2d 1026, 1037 (Pa. 2003)] (in the context of a challenge to the prosecutor's closing argument, stating that failure to raise the issue before the trial court would render the issue waived pursuant to Rule 302).[13]

---

[12] It appears Appellant may have withdrawn this issue. In an abundance of caution, we address it.

[13] Pennsylvania Rule of Appellate Procedure 302 provides: "Issues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a).

***Id.*** at 638. Analogously, Appellant has waived the issue for failing to object to the prosecutor's closing argument. ***See id.***

Next, Appellant contends the evidence was insufficient to sustain her convictions for each of the crimes charged. As a prefatory matter, we consider whether Appellant has waived the issue of the sufficiency of the evidence. Pennsylvania Rule of Appellate Procedure 1925(b) provides, *inter alia*, "Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived." Pa.R.A.P. 1925(b)(4)(vii).[14]

---

[14] Rule 1925(b)(4) provides:

> *Requirements; waiver.*
>
> \* \* \*
>
> (ii) The Statement shall concisely identify each ruling or error that the appellant intends to challenge with sufficient detail to identify all pertinent issues for the judge. The judge shall not require the citation to authorities; however, appellant may choose to include pertinent authorities in the Statement.
>
> \* \* \*
>
> (iv) The Statement should not be redundant or provide lengthy explanations as to any error. Where non-redundant, non-frivolous issues are set forth in an appropriately concise manner, the number of errors raised will not alone be grounds for finding waiver.

In ***Commonwealth v. Garland***, 63 A.3d 339 (Pa. Super. 2013), the "[a]ppellant's Pa.R.A.P. 1925(b) statement simply provided a generic statement stating '[t]he evidence was legally insufficient to support the convictions.'"  ***Id.*** at 344.  This Court found the appellant waived his sufficiency of the evidence claim, reasoning:

> In order to preserve a challenge to the sufficiency of the evidence on appeal, an appellant's Rule 1925(b) statement must state with specificity the element or elements upon which the appellant alleges that the evidence was insufficient.  "Such specificity is of particular importance in cases where, as here, the appellant was convicted of multiple crimes each of which contains numerous elements that the Commonwealth must prove beyond a reasonable doubt."  Here, as is evident, [the a]ppellant . . . failed to specify which elements he was challenging in his Rule 1925(b) statement . . . .  Thus, we find [his] sufficiency claim waived on this basis.

***Id.*** (citations omitted).[15]

---

> (v) Each error identified in the Statement will be deemed to include every subsidiary issue contained therein which was raised in the trial court; this provision does not in any way limit the obligation of a criminal appellant to delineate clearly the scope of claimed constitutional errors on appeal.

Pa.R.A.P. 1925(b)(4)(ii), (iv)-(v).

[15] ***Cf. Commonwealth v. Laboy***, 936 A.2d 1058, 1060 (Pa. 2007) (finding issue not waived in "relatively straightforward drug case" where 1925(b) statement merely stated evidence of drug trafficking and conspiracy was insufficient, without specifying which element Commonwealth allegedly failed to prove, and where trial court readily apprehended defendant's claim and addressed it in substantial detail).  Instantly, Appellant was charged with numerous offenses.  The trial court did not address Appellant's sufficiency claims in substantial detail.  On the contrary, the court opined: "Having

In her Rule 1925(b) statement, Appellant articulated her sufficiency claims as follows:

> The evidence presented by the Commonwealth at (sic) was insufficient to establish the elements of each of the offenses charged when apart from her presence in the location of the fire, and having left the area approximately thirty-four (34) minutes before the fire was called in to 911, no evidence established that [Appellant] set this fire or that it was even set by a human hand when Corporal Hilbert did not conduct a thorough fire investigation to rule out an electrical fire[.]

Appellant's Concise Statemenet of Matters Complained of on Appeal Pursuant to Rule 1925(b), at 2.[16]

In the instant case, Appellant was convicted of multiple crimes containing numerous elements. Her 1925(b) statement failed to state any element upon which she alleged the evidence was insufficient. Therefore, the issue is waived. *See Garland*, 63 A.3d at 344.

In her fifth issue, Appellant contends the verdict was against the weight of the evidence. She avers that the evidence "only established that she was in the location of the fire approximately thirty-four minutes before

---

presided over the trial in this matter, this [c]ourt does not hesitate in concluding that the evidence presented was more than sufficient to enable a jury to find [Appellant] guilty on all counts." Trial Ct. Op. at 7. The trial court stated: "Additionally, we believe the sufficiency issue is waived due to lack of specificity. [Appellant's] 1925(b) Statement does not contain the required specificity for this [c]ourt to adequately address which elements of the offenses charged were unproven at trial." *Id.*

[16] We note that Appellant's weight of the evidence claim reiterates a portion of the sufficiency claim. *See infra.*

the fire was called in to 911." Appellant's Brief at 45. Appellant avers that the testimony of the Commonwealth's expert, Corporal Hilbert, conflicted with that of her expert, John Agosti, regarding the cause of the fire. *Id.* at 48. Appellant concludes that the verdict was against the weight of the evidence as to all charges. *Id.* at 51.

In considering Appellant's weight of the evidence claim, we are guided by the following principles.

> A claim alleging the verdict was against the weight of the evidence is addressed to the discretion of the trial court. Accordingly, an appellate court reviews the exercise of the trial court's discretion; it does not answer for itself whether the verdict was against the weight of the evidence. It is well settled that the [fact-finder] is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses, and a new trial based on a weight of the evidence claim is only warranted where the [factfinder's] verdict is so contrary to the evidence that it shocks one's sense of justice. In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion.

> Moreover,

> [a] new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial court is to determine that notwithstanding all the evidence, certain facts are so clearly of greater weight that to ignore them, or to give them equal weight with all the facts, is to deny justice. A motion for a new trial on the grounds that the verdict is contrary to the weight of the evidence concedes that there is sufficient evidence to sustain the verdict; thus the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner.

Lastly,

[b]ecause the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Commonwealth v. Landis*, 89 A.3d 694, 699 (Pa. Super. 2014) (citations omitted).

Instantly, the trial court opined:

[W]e do not hesitate in finding that there was more than enough evidence presented to enable the jury to find [Appellant] guilty of the crimes charged. We do not believe that the verdict reached in this matter would shock the conscience of a reasonable person reviewing the evidence as it was presented to the jury at the time of trial.

Having presided over the trial in this matter, the jury clearly believed the Commonwealth's witnesses and evidence over that which was presented by the Defense. Based upon the jury's verdict, it is obvious to this [c]ourt that the jury also resolved all issues of credibility in favor of the Commonwealth's witnesses and against the Defense witnesses, including that of the expert witnesses. The jury was free to believe all, part, or none of the testimony of the witnesses. In this case, however, it is evidence that the jury found credible the Commonwealth's experts, Corporal Shawn Hilbert and Paul Savage, and did not find entirely credible the Defense expert, John Agosti. We also note the fact that [Appellant] testified at trial, even though it was her right not to do so. [Appellant] denied the allegations against her.

Once again, taking into consideration the length of the trial and the vast amount of evidence presented, [Appellant's] allegation that the verdict was against the weight of the evidence simply lacks merit.

Trial Ct. Op. at 8-9.

The trial court found no merit to Appellant's claim that the verdict was against the weight of the evidence. *Id.* at 9. Appellant asks this Court to reweigh the evidence and find the evidence that inculpated her was not credible. This we cannot do. *See Landis*, 89 A.3d at 699. We discern no abuse of discretion by the trial court. *See id.*

Sixth, Appellant contends the trial court erred in denying her motion for judgment of acquittal as to the charge of arson-reckless burning. Appellant contends the evidence was insufficient.[17] Appellant's Brief at 52. She avers the Commonwealth failed to prove that Mr. Temporski's personal items were affected by the fire as required to prove "she started a fire on the property of another and thereby recklessly 'place[d] any personal property of another having a value that exceeds $5,000 . . . in danger of damage or destruction.'" *Id.* at 52-53, quoting 18 Pa.C.S. § 3301(d)(2).[18]

---

[17] We acknowledge that we find Appellant has waived her sufficiency of the evidence claims. Because this claim is raised in terms of the denial of her motion for judgment of acquittal, we have addressed it.

[18] The statute defines the offense as follows:

**(d) Reckless burning or exploding.**—A person commits a felony of the third degree if he intentionally starts a fire or causes an explosion, or if he aids, counsels, pays or

On appeal, Appellant fails to cite to the place in the record where this claim was preserved before the trial court. **See** Pa.R.A.P. 2117(c) (requiring statement of case to specify state of proceedings at which issue sought to be reviewed on appeal was raised), 2119(e) (requiring same of argument section of appellate brief); **Commonwealth v. Fransen**, 42 A.3d 1100, 1106 n.11 (Pa. Super. 2012) (*en banc*), *appeal denied*, 76 A.3d 538 (Pa. 2013) ("Failing to direct this Court to specific portions of the record in support of an argument violates Pa.R.A.P. 2119 (c) [and for] that reason alone, we could conclude this issue is waived.") However, we decline to find waiver on this basis.

Appellant's motion for judgment of acquittal was made at the close of the case pursuant to Pa.R.Crim.P. 606 which provides in pertinent part:

> (A) A defendant may challenge the **sufficiency of the evidence** to sustain a conviction of one or more of the offenses charged in one or more of the following ways:
>
> \* \* \*

---

> agrees to pay another to cause a fire or explosion, whether on his own property or on that of another, and thereby recklessly:
>
> \* \* \*
>
> (2) places any personal property of another having a value that exceeds $5,000 or if the property is an automobile, airplane, motorcycle, motorboat or other motor-propelled vehicle in danger of damage or destruction.

18 Pa.C.S. § 3301(d)(2).

(2) a motion for judgment of acquittal at the close of all the evidence[.]

Pa.R.Crim.P. 606(A)(2).

A motion for judgment of acquittal challenges the sufficiency of the evidence to sustain a conviction on a particular charge, and is granted only in cases in which the Commonwealth has failed to carry its burden regarding that charge.

The standard of review for claims of insufficient evidence is well-settled. With respect to such claims, we consider the evidence in the light most favorable to the Commonwealth as verdict winner. In that light, we decide if the evidence and all reasonable inferences from that evidence are sufficient to establish the elements of the offense beyond a reasonable doubt. We keep in mind that it was for the trier of fact to determine the weight of the evidence and the credibility of witnesses. The jury was free to believe all, part or none of the evidence. This Court may not weigh the evidence or substitute its judgment or that of the factfinder.

***Commonwealth v. Devries***, \_\_\_ A.3d \_\_\_ , \_\_\_, 2015 WL 1268160 at *3

(Pa. Super. 2015) (citations omitted).

In the case *sub judice*, the trial court opined:

[T]he Commonwealth and [Appellant] entered into a Stipulation governing the claims of the victims and the value of losses suffered by each. This Stipulation was read into the record by the Assistant District Attorney in the presence of the jury. Defense counsel also acknowledged that the Stipulation as read by the Assistant District Attorney accurately represented the agreement of the parties. As such, we will not now hear [Appellant] complain about something[s]he previously agreed to. It was certainly this [c]ourt's understanding that a global resolution was reached between the Commonwealth and Defense relative to the **losses sustained by all occupants of the building and the building owner**.

Trial Ct. Op. at 9-10 (emphasis added).[19]  We agree no relief is due.

At trial, the parties entered into the following Stipulation:

> Number 1, due to the fire at the Lantern Lane Building located at 314-316 Main Street, Conyngham, Pennsylvania, tenant Nicole Buak filed a claim with her insurance company, Erie Insurance . . . .  The total amount of the claim paid by Erie Insurance was $18,156.36.
>
> Two, due to the fire at the Lantern Lane Building . . . building owner, Kenneth Temborski, doing business as American Industrial Resources, filed a claim with his Insurance Company, Erie Insurance . . . .  The total amount of the claim paid by Erie Insurance was $984,243. The total replacement cost per Erie Insurance was $1,323,345.00.
>
> Three, due to the fire at the Lantern Lane Building . . . tenants, Falvello Law Firm, filed a claim with their insurance company, Hartford Insurance . . . .  The total amount of the claim paid by Hartford Insurance was $10,000.
>
> . . . No. 4, due to the fire at Lantern Lane Building . . . tenant, Richard Grovich, DMD, filed a claim with his insurance company, Hartford Insurance . . . .  The total amount of the claim paid by Hartford Insurance was $100,000.
>
> Number 5, due to the fire at the Lantern Lane Building . . . tenant, Navigate Financial Advisors, filed a claim with their insurance company, State Farm Insurance . . . .  The total amount of [sic] claim paid by State Farm Insurance was $10,000.

---

[19] We note that the trial court found the issue waived because Appellant did not move for a judgment of acquittal after the Commonwealth rested its case.  Trial Ct. Op. at 10.  However, counsel moved for a judgment of acquittal pursuant to Pa.R.Crim.P. 606(A)(2).

>Number 6, due to the fire at the Lantern Lane building . . . tenant, M & L Trucking, filed a claim with their insurance company, Acadia Insurance . . . . The total amount of (sic) claim paid by Acadia Insurance was $2,100.
>
>Number 7, due to the fire at the Lantern Lane Building . . . tenant, Barbara Reese, filed a claim with her insurance company, State Farm Insurance . . . . The total amount of the claim paid by State Farm Insurance was $25,000.
>
>Number 8, due to the fire at the Lantern Lane Building . . . tenant, Nellie Stratts, filed a claim with her insurance company, State Farm Insurance . . . . The total amount of [sic] claim paid by State Farm Insurance was $18,000.

N.T. at 596-98.

Following the reading of the stipulation to the jury, the court asked defense counsel if it accurately represented the stipulation between the parties and counsel agreed. *Id.* at 598. The court then explained to the jury that the parties agreed that the facts as recited in the stipulation were true and they "should regard the stipulated or agreed fact as proven." *Id.* at 598-99. The stipulated facts indicated that the fire placed personal property in danger of damage or destruction pursuant to 18 Pa.C.S. § 3301(d)(2). Appellant's claim that the trial court erred in denying her motion for judgment of acquittal as to arson-reckless burning is without merit. *See Devries*, ___ A.3d at ___ , 2015 WL 1268160 at *3.

Next, Appellant contends that the fourteen to twenty-eight years sentence was manifestly excessive. Appellant's Brief at 54. Appellant claims the court gave consideration to impermissible factors when imposing her

excessive and unreasonable sentence, *viz*., knowledge of risk of harm to firemen, risk of harm to victims, age of victims, financial damage to the building, and emotional damage to victims. *Id.* at 57.

This Court has stated,

> Challenges to the discretionary aspects of sentencing do not entitle an appellant to appellate review as of right. Prior to reaching the merits of a discretionary sentencing issue:
>
> > [W]e conduct a four part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Commonwealth v. Evans*, 901 A.2d 528, 533 (Pa. Super. 2006) (some citations and punctuation omitted).

Instantly, Appellant timely appealed, preserved her issue in her post sentence motion,[20] and included a Pa.R.A.P. 2119(f) statement in her brief. *See* Appellant's Brief at 23-24. Accordingly, we ascertain whether Appellant has presented a substantial question. *Id.* "A defendant presents a substantial question when he sets forth a plausible argument that the sentence violates a provision of the sentencing code or is contrary to the

---

[20] Appellant's Post-Sentence Mot., 7/3/13, at 9.

fundamental norms of the sentencing process." ***Commonwealth v. Dodge***, 77 A.3d 1263, 1268 (Pa. Super. 2013) (punctuation omitted), *appeal denied*, 91 A.3d 161 (Pa. 2014).[21]

In ***Commonwealth v. McNabb***, 819 A.2d 54 (Pa. Super. 2003), this Court held that an appellant "raises a substantial question by alleging his sentence is excessive due to the trial court's reliance on impermissible factors." ***Id.*** at 56-57. We find Appellant has raised a substantial question. ***See id.***

Appellant argues the court failed to consider the sentencing factors found in 42 Pa.C.S. § 9721. Appellant's Brief at 56. She also contends "[t]he court's reasons for its imposition of aggravated range sentences was the knowledge of the risk of harm to firemen, the knowledge of the risk of harm to the victims, the age of the victims, the financial damage to the building, and emotional damage to the victims."[22] ***Id.*** at 57.

---

[21] "[W]e disapprove of Appellant's failure to indicate where his sentences fell in the sentencing guidelines and what provision of the sentencing code was violated." ***Dodge***, 77 A.3d at 1271. However, because the Commonwealth has not objected to the adequacy of Appellant's argument, we decline to find waiver on this defect. ***See id.*** At sentencing, the court noted that it was sentencing Appellant within the aggravated range of the guidelines. ***See*** N.T., 6/24/13, at 29-31.

[22] Appellant also claims the court failed to consider her serious health issues. Appellant's Brief at 60. The "court failed to give weight to the fact that [she] does not have a prior record" and "to give weight to [her] father[s'] testimony as to how she was raised and asking for compassion and understanding." ***Id.*** at 60-61. "[T]his Court has held on numerous occasions that a claim of inadequate consideration of mitigating factors does

Our standard of review is as follows:

> [s]entencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. An abuse of discretion is more than just an error in judgment and, on appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will. More specifically, 42 Pa.C.S.A. § 9721(b) offers the following guidance to the trial court's sentencing determination:
>
> > [T]he sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant.
>
> 42 Pa.C.S.A. § 9721(b).
>
> Furthermore,
>
> > section 9781(c) specifically defines three instances in which the appellate courts should vacate a sentence and remand: (1) the sentencing court applied the guidelines erroneously; (2) the sentence falls within the guidelines, but is "clearly unreasonable" based on the circumstances of the case; and (3) the sentence falls outside of the guidelines and is "unreasonable." 42 Pa.C.S. § 9781(c). Under 42 Pa.C.S. § 9781(d), the appellate courts must review the record and consider the nature and circumstances of the offense, the sentencing court's observations of the defendant, the findings that formed the basis of the sentence, and the sentencing

---

not raise a substantial question for our review." ***Commonwealth v. Disalvo***, 70 A.3d 900, 903 (Pa. Super. 2013) (citation omitted). We note, however, that the sentencing court stated: "I've also considered the testimony of [Appellant] and her father and considered her age and her relatively minor prior record. She does have a prior record score of zero and has some health issues." N.T., 6/24/13, at 29.

> guidelines. The weighing of factors under 42 Pa.C.S. § 9721(b) is exclusively for the sentencing court, and an appellate court could not substitute its own weighing of those factors. The primary consideration, therefore, is whether the court imposed an individualized sentence, and whether the sentence was nonetheless unreasonable for sentences falling outside the guidelines, or clearly unreasonable for sentences falling within the guidelines, pursuant to 42 Pa.C.S. § 9781(c).

*Commonwealth v. Bricker*, 41 A.3d 872, 875-76 (Pa. Super. 2012)

(alterations and some internal citations omitted).

Our Supreme Court has stated:

> Where pre-sentence reports exist, we shall continue to presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors. A pre-sentence report constitutes the record and speaks for itself. In order to dispel any lingering doubt as to our intention of engaging in an effort of legal purification, we state clearly that sentencers are under no compulsion to employ checklists or any extended or systematic definitions of their punishment procedure. **Having been fully informed by the pre-sentence report, the sentencing court's discretion should not be disturbed.** This is particularly true, we repeat, in those circumstances where it can be demonstrated that the judge had any degree of awareness of the sentencing considerations, and there we will presume also that the weighing process took place in a meaningful fashion.

*Commonwealth v. Devers*, 546 A.2d 12, 18 (Pa. 1988) (emphasis added).

Instantly, at sentencing, the court opined: "I have had an opportunity obviously to preside over the trial held in this matter, have reviewed the **presentence investigation report**, the various victim impact statements that were presented to the [c]ourt, and all of the evidence and argument

presented this morning." N.T., 6/24/13, at 28 (emphasis added). Accordingly, after examining the record as a whole, we find that the trial court's sentence was not manifestly excessive. We discern no abuse of discretion. *See Devers*, 546 A.2d at 18.

Lastly, Appellant contends counsel was ineffective for failing to object during the Commonwealth's closing argument to the introduction of the audio portion of the backdraft video and improper argument regarding the video. Appellant's Brief at 63. It is well-settled that challenges to the effectiveness of counsel are generally deferred until collateral review. *See* *Commonwealth v. Grant*, 813 A.2d 726, 738 (Pa. 2002). There are two exceptions:

> First, we appreciate that there may be extraordinary circumstances where a discrete claim (or claims) of trial counsel ineffectiveness is apparent from the record and meritorious to the extent that immediate consideration best serves the interests of justice; and we hold that trial courts retain their discretion to entertain such claims.

> Second, with respect to other cases and claims, including cases such as [*Commonwealth v. Bomar*, 826 A.2d 831 (Pa. 2003)] and the matter *sub judice*, where the defendant seeks to litigate multiple or prolix claims of counsel ineffectiveness, including non-record-based claims, on post-verdict motions and direct appeal, we repose discretion in the trial courts to entertain such claims, but only if (1) there is good cause shown, and (2) the unitary review so indulged is preceded by the defendant's knowing and express waiver of his entitlement to seek PCRA review from his conviction and sentence, including an express recognition that the waiver subjects further collateral review to the time and serial petition restrictions of the PCRA.

*Commonwealth v. Holmes*, 79 A.3d 562, 563-64 (Pa. 2013).

Instantly, Appellant did not raise his ineffectiveness claim for consideration by the trial court and, moreover, did not knowingly waive his right to seek PCRA review. *See id.* Absent consideration, "the claims regarding trial counsel's ineffectiveness will be dismissed without prejudice." *See Grant*, 813 A.2d at 739. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/16/2015